AO93 Search and Seizure Warrant

FILED ___ LODGED
___ RECEIVED ___ COPY

AUG 2 3 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _NM_ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

In the Matter of the Search of
One (1) Black Samsung Smartphone Enclosed in
Clear Black Protective Case

Case No.  24 - 2151 MB

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

### As further described in Attachment A-1.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### As set forth in Attachment B-1.

**YOU ARE COMMANDED** to execute this warrant on or before ___9-6-2024___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 8/23/2024 at 9:59am _____
                                                            *Judge's signature*

City and state: Yuma, Arizona _____     Honorable James F. Metcalf, United States Magistrate Judge
                                                            *Printed name and title*

## ATTACHMENT A-1

*Property to be searched*

The property to be searched is one (1) black Samsung smartphone enclosed within a clear black protective case, assigned call number 928-398-9315, used by Cristian Camarena-Lopez (hereafter, "SUBJECT CELLULAR TELEPHONE 1"). SUBJECT CELLULAR TELEPHONE 1 is currently located at the United States Drug Enforcement Administration (DEA) Yuma Resident Office (YRO) evidence vault, in Yuma, Arizona.

This warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 1 for the purpose of identifying the electronically stored information described in Attachment B-1.

**ATTACHMENT B-1**

*Property to be seized*

1.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), and 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances), occurring during the period beginning October 17, 2023, through and including February 15, 2024, including:

   a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b.   all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d.   all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e.   any information recording schedule or travel;

   f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g.   contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history.

   As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

RECEIVED _____ _____ LODGED
_____ COPY

AUG 2 3 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
One (1) Black Samsung Smartphone Enclosed in
Clear Black Protective Case

Case No. 24-2151MB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A-1**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B-1.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Controlled Substances |

The application is based on these facts:

### See attached Affidavit of DEA Task Force Agent Jesus D. Barron

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA William Bryan

*William H. Bryan*
Digitally signed by
WILLIAM BRYAN
Date: 2024.08.23
08:23:09 -07'00'

JESUS BARRON
Digitally signed by JESUS BARRON
Date: 2024.08.22 22:06:40 -07'00'

*Applicant's Signature*

Jesus D. Barron, Task Force Agent, DEA
*Printed name and title*

Sworn telephonically and signed electronically.

Date: 8/23/2024

*Judge's signature*

City and state: Yuma, Arizona

Honorable James F. Metcalf, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

*Property to be searched*

The property to be searched is one (1) black Samsung smartphone enclosed within a clear black protective case, assigned call number 928-398-9315, used by Cristian Camarena-Lopez (hereafter, "SUBJECT CELLULAR TELEPHONE 1"). SUBJECT CELLULAR TELEPHONE 1 is currently located at the United States Drug Enforcement Administration (DEA) Yuma Resident Office (YRO) evidence vault, in Yuma, Arizona.

This warrant authorizes the forensic examination of SUBJECT CELLULAR TELEPHONE 1 for the purpose of identifying the electronically stored information described in Attachment B-1.

**ATTACHMENT B-1**

*Property to be seized*

1.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 that relate to violations of 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), and 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances), occurring during the period beginning October 17, 2023, through and including February 15, 2024, including:

   a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b.   all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d.   all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e.   any information recording schedule or travel;

   f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g.   contextual information necessary to understand the above evidence.

2.      Any records and information found within the digital contents of SUBJECT CELLULAR TELEPHONE 1 showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications;

subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

<u>**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**</u>

Your Affiant, Jesus D. Barron, being first duly sworn, hereby deposes and states as follows:

**I.**     <u>**INTRODUCTION AND AGENT BACKGROUND**</u>

1.     Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone described more particularly in Attachment A-1 (hereafter, "SUBJECT CELLULAR TELEPHONE 1") and Attachment A-2 (hereafter, "SUBJECT CELLULAR TELEPHONE 2"), respectively, and to extract the electronically stored information set forth in Attachment B-1 and Attachment B-2, respectively, which represents evidence and/or instrumentalities of the criminal violations further described below. Hereinafter, SUBJECT CELLULAR TELEPHONE 1 and SUBJECT CELLULAR TELEPHONE 2 shall be referred to collectively as the "SUBJECT CELLULAR TELEPHONES".

2.     I am a United States Border Patrol (USBP) Agent- Intelligence (BPA-I) with Department of Homeland Security/Office of Border Patrol (DHS/OBP), Yuma Sector Intelligence Unit. I have been a USBP Agent (BPA) since March of 2015, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit, assigned to the Drug Enforcement Administration (DEA) Yuma Resident Office (YRO), a component ofDEA's Phoenix Field Division. Specifically, I am assigned to the Enforcement Group 2 (EG2) of the YRO and have been assigned to the group since April of 2023.

3.     On March of 2015, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I also received training in anti-smuggling investigations upon being detailed to the Douglas Alien Smuggler Identification and Deterrence (ASID) Unit. Additionally, I attended the Tucson Sector Disrupt Academy, which teaches skills such as counter

surveillance and enhancing our tactical skills by performing duties in plainclothes, serving warrants, and room clearing.

4.      As a member of the Douglas Disrupt/Deny Unit (DDU) and Yuma Field Intelligence Team (FIT), I arrested and referred for prosecution many of the station's top priority targets, for alien smuggling and narcotics smuggling. Additionally, I have conducted investigations and operations that have led to successful prosecution of criminal cases and the disposition of administrative cases. I also received training that focused on the transportation and distribution of controlled substances, including the identification of packaging and distribution techniques used by people involved in the transportation and distribution of controlled substances.

5.      By virtue of my duties as a BPA, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; (b) interviewing witnesses, confidential sources (CSs) and sources of information (SOIs) relative to illegal trafficking of aliens and narcotics and the distribution of monies and assets derived from the smuggling of aliens and narcotics (to include the laundering of alien and narcotic smuggling proceeds); and (c) functioning as a case agent, entailing the supervision of specific investigations involving the smuggling of aliens.

6.      I am familiar with the facts and circumstances of this investigation as result of my personal participation in the investigation, discussions with other agents who were involved in the investigation, and review of reports written by other agents concerning the investigation.

7.      The facts contained in this Affidavit are based in part on my direct participation in the investigation, information provided to me by other DEA Special Agents (SAs) and other law enforcement officers, either directly or indirectly through reports and/or affidavits; surveillance conducted by law enforcement officers; information

2

provided by CSs and/or SOIs; and/or information learned through seizures of contraband. I also rely on my own experience, training, and background in evaluating this information.

8.    Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all of the relevant facts known to law enforcement officers regarding this investigation.

## II.    <u>**BASIS FOR PROBABLE CAUSE**</u>

9.    On October 17, 2023, the user of SUBJECT CELLULAR TELEPHONE 1 (defined below) communicated via WhatsApp[1] with a Mexico-based source of supply (SOS) on twenty-three occasions. Pursuant to an ongoing investigation, DEA Yuma had identified the SOS as a coordinator of drug couriers submitting parcels containing narcotics for mailing at various United States post offices.

10.    On December 11, 2023, investigators with the United States Postal Inspection Service (USPIS) identified a suspicious parcel suspected to contain drugs at a San Luis, Arizona post office (SLPO). The package exhibited several characteristics common to drug-laden mail parcels. Subsequently, a trained narcotics-detecting canine conducted a free-air sniff of the parcel and alerted to the presence of illegal drugs. USPIS inspectors obtained a warrant to search the parcel. On December 14, 2023, USPIS opened the seized parcel pursuant to the search warrant and discovered approximately 1,338 grams

---

[1]WhatsApp is a cross-platform smartphone application that permits users to send and receive messages and calls. The smartphone-based WhatsApp Messenger allows users to exchange, inter alia, text messages, audio messages, video messages, and files such as documents and photos with other WhatsApp users. It also permits users to engage in real-time voice and video calls and to set up and participate in group chats. Messages and calls sent through WhatsApp Messenger are transmitted over the Internet via WhatsApp servers located in the United States.

of suspected methamphetamine within "burrito"-shaped plastic packaging. A subsequent field test indicated presumptive positive for methamphetamine.

11.    USPIS then reviewed surveillance camera footage from the SLPO relating to the December 11, 2023 mailing. USPIS investigators determined that a Hispanic male (later identified as Cristian Camarena Lopez ("CAMARENA")) arrived in a white Mustang bearing Arizona license plate "P2A2DH" (the "White Mustang"), entered the SLPO, and mailed the methamphetamine-laden parcel. United States/Mexico border crossing records indicated that CAMARENA was the last male who had entered the United States driving the White Mustang. After comparing CAMARENA's State of Arizona driver's license photograph with photographs of the mailer of the methamphetamine-laden parcel, investigators determined that the photographs depicted the same individual.

12.    On December 21, 2023, law enforcement officers obtained a tracking warrant for the White Mustang used by CAMARENA. Pursuant to visual surveillance, investigators discovered that CAMARENA worked at a business located on East 43rd Street in Yuma, Arizona. Investigators installed the GPS tracking device on the White Mustang at CAMARENA's place of employment.

13.    On February 6, 2024, investigators observed the location information provided by the tracking device affixed to the White Mustang. The tracking information indicated that, earlier in the day, the White Mustang traveled to a WalMart in San Luis, Arizona and then to the SLPO a few hours later. Upon reviewing surveillance camera footage from the SLPO, investigators observed CAMARENA exit the White Mustang, enter the SLPO, carry two empty United States Postal Service (USPS) parcel boxes out of the SLPO, and return to the White Mustang. Based tracking information, the White Mustang traveled to a San Luis, Arizona Walmart. The White Mustang remained at the Walmart for a substantial period of time, then proceeded to and parked at CAMARENA's

4

residence, located at 824 North 4th Drive, San Luis, Arizona. The White Mustang remained at CAMARENA's residence overnight.

14.     On February 7, 2024, investigators conducted surveillance on CAMARENA.

Surveillance officers observed CAMARENA drive to a residence in San Luis, Arizona, to a bank in Yuma, Arizona, and then to a post office in Yuma, Arizona. Investigators observed CAMARENA present a parcel (hereinafter, "Parcel 1") for mailing at the Yuma post office. After stopping at a Burger King in Yuma, CAMARENA drove the White Mustang to a UPS Store in Yuma. CAMARENA entered the UPS Store with a second parcel (hereinafter, "Parcel 2") and presented Parcel 2 for mailing. CAMARENA then returned to San Luis, Arizona.

15.     Investigators obtained a warrant to search Parcel 1 and a warrant to search Parcel 2, respectively. Upon opening Parcel 1, investigators discovered approximately 1,070.6 grams (total gross weight, including packaging) of small blue suspected fentanyl pills concealed in a small board game titled "Less is More". A subsequent field test of a sample of the small blue pills indicated presumptive positive for the presence of fentanyl. Upon opening Parcel 2, investigators discovered approximately 0.48 kilograms (total gross weight, including packaging) of a crystalline substance, again concealed in a small board game titled "Less is More". A subsequent field test of a sample of the substance indicated presumptive positive for the presence of methamphetamine.

16.     On February 12, 2024, investigators traveled to a WalMart store in San Luis, Arizona. Tracking information for the White Mustang indicated that the White Mustang had driven to this San Luis WalMart prior to CAMARENA's mailing Parcel 1 and Parcel 2. Upon reviewing WalMart surveillance footage, investigators observed CAMARENA enter the Walmart store, purchase multiple brown shipping boxes, two "Less is More" board games, and one roll of packaging tape. The aforesaid items were identical to those discovered within Parcel 1 and Parcel 2.

5

17.     On February 15, 2024, at approximately 12:48 p.m., law enforcement officers conducted a stop of the White Mustang and arrested CAMARENA without incident. CAMARENA possessed a black Samsung smartphone with a clear black case (SUBJECT CELLULAR TELEPHONE 1) on his person. Post-arrest, *post-Miranda,* CAMARENA declined to speak with law enforcement officers.

18.     On that same date, (February 15, 2024), law enforcement officers obtained and executed a warrant to search CAMARENA's residence. In the master bedroom, investigators discovered three flat USPS shipping boxes. Inside the garage, investigators found three empty rifle boxes.

19.     In the guest bedroom, law enforcement officers discovered a taped rectangular "brick" containing suspected cocaine concealed in a box under a pillow on the bed of a guest bedroom. CAMARENA's wife stated that CAMARENA's brother was using the guest bedroom and had been doing so for approximately two weeks. Law enforcement officers noted that CAMARENA and his wife utilized the master bedroom, and the guest bedroom where the suspected cocaine was discovered appeared to be occupied by a third party. Additionally, investigators observed CAMARENA's brother's passport on the nightstand next to the bed where law enforcement officers discovered the suspected cocaine. A subsequent field test of a sample of the substance within the "brick" indicated presumptive positive for the presence of cocaine. The total gross weight of the suspected cocaine was approximately 1.24 KG (including packaging).

20.     At the DEA YRO, law enforcement officers conducted an inventory search of the White Mustang. Investigators found various personal items in the White Mustang and discovered a light purple iPhone with a cracked screen and black case (SUBJECT CELLULAR TELEPHONE 2) in the center console of the White Mustang. Investigators seized SUBJECT CELLULAR TELEPHONE 2, placed the remainder of the items discovered in the White Mustang in a box, and returned the box to CAMARENA's wife.

21.     On February 16, 2024, law enforcement officers filed a federal criminal complaint against CAMARENA, alleging possession with the intent to distribute fentanyl and possession with intent to distribute methamphetamine in Case No. 2:24-mj-0 1238- JFM.

22.     On March 12, 2024, a federal Grand Jury convened in Phoenix, Arizona returned an indictment against CAMARENA, charging him with two counts of possession with intent to distribute methamphetamine and one count of possession with intent to distribute fentanyl, all in violation of 21 U.S.C. §§ 841(a)(l) and 84l(b)(l)(C).

23.     On July 11, 2024, the Honorable James F. Metcalf, United States Magistrate Judge for the District of Arizona, Yuma Division, issued a warrant authorizing the search of the SUBJECT CELLULAR TELEPHONES in Case No. 24-2009MB. Due to technical difficulties relating to system outages, law enforcement officers were unable to retrieve the SUBJECT CELLULAR TELEPHONES from the evidence storage location. Accordingly, law enforcement officers were unable to execute the warrant to search the SUBJECT CELLULAR TELEPHONES within the time frame specified in the warrant. Law enforcement officers are hereby submitting the instant application to search the SUBJECT CELLULAR TELEPHONES as previously authorized by this Court.

24.     The SUBJECT CELLULAR TELEPHONES are currently in storage at the DEA YRO vault. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the possession of DEA. Therefore, it is believed the SUBJECT CELLULAR TELEPHONES contain evidence of the crimes committed by CAMARENA and may assist with identifying other co-conspirators and potential contraband storage locations, as well as provide records of communications between CAMARENA and other members.

III.     **ITEMS TO BE SEIZED**

25.     Based upon the facts contained in this Affidavit, your Affiant submits there

is probable cause to believe that the items listed in Attachment B-1 and Attachment B-2, respectively, will be found in the contents of the SUBJECT CELLULAR TELEPHONES, respectively.

26.     Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following:

a.     Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities. Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONES;

b.     Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities. Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONES; and

c.     Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions. Moreover, drug traffickers commonly take photographs of their firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONES.

27.     In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONES.

## IV.     DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

28.     As described in Attachment B-1 and Attachment B-2, respectively, this

8

application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES, respectively. Thus, the warrant applied for would authorize the copy of electronically stored information under Rule 41(e)(2)(B).

29.     *Probable cause*. Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONES for at least the following reasons:

a.     Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b.     Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning satellite ("GPS") information.

c.     Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after

9

they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

        d.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space-that is, in space on the cellular telephone that is not currently being used by an active file-for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

        30.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONES because:

        a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted p01iion of a file (such as a paragraph that has been deleted from a word processing file).

        b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/ encrypting such evidence in an effort to conceal it from law enforcement).

       c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

       d.     The process of identifying the exact files, blocks, registry entries,

11

logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  31. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, respectively, including the use of computer-assisted scans, with respect to violations of 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), and 21 U.S.C. § 841(a)(l) (Possession with Intent to Distribute Controlled Substances), occurring during the period beginning October 17, 2023, through and including February 15, 2024.

  32. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

  //

  //

## V.    CONCLUSION

33.    Your Affiant submits there is probable cause to believe that the items listed in Attachment B-1 and Attachment B-2, respectively, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances), and 21 U.S.C. § 84l(a)(l) (Possession with Intent to Distribute Controlled Substances) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONES, respectively, further described in Attachment A-1 and Attachment A-2, respectively.

JESUS
BARRON

Digitally signed by JESUS
BARRON
Date: 2024.08.22 22:09:34
-07'00'

Task Force Agent Jesus D. Barron
U.S. Drug Enforcement Administration

Subscribed  electronically and sworn to telephonically this ___23rd___ day of August, 2024.

HONORABLE JAMES F. METCALF
UNITED STATES MAGISTRATE JUDGE